...e Federal Communications Commis-

...e PRESIDING OFFICER. Is there ...ction?

...r. YOUNG. I object.

...r. WHERRY. Then, Mr. President, ...ove that the nomination of Frieda B. ...nnock, of New York, be confirmed.

...he PRESIDING OFFICER. The ...stion is on agreeing to the motion of ...e Senator from Nebraska.

Mr. BALL. Mr. President, what kind ...procedure is this?—We are not in ...cutive session.

Mr. WHERRY. I asked for unani-...us consent.

Mr. BALL. I did not hear any motion.

Mr. WHERRY. I understand that I ...ed for unanimous consent.

The PRESIDING OFFICER. The ...ator asked unanimous consent, and ...animous consent was granted.

Mr. BALL. I am sorry.

The PRESIDING OFFICER. The ...air did not understand that that is ...at it was for.

Mr. WHERRY. If there is any doubt ...bout it——

The PRESIDING OFFICER. Con-...nt was granted.

Mr. WHERRY. Very well.

Mr. BALL. Are we in executive ses-...on, then?

The PRESIDING OFFICER. We are.

Mr. WHERRY. We are, for the con-...deration of the nomination of Miss ...rieda B. Hennock.

Mr. BALL. May we proceed in the ...egular order, then, and have the nom-...nation stated, so that we will know what ...e are doing? I do not like to have ...he Senate doing things by unanimous ...onsent. I am not going to hold up the ...enate——

Mr. WHERRY. That is the very thing ...hat is done after the Executive Calen-...dar is taken up, and I ask that the nom-...ination be stated.

The PRESIDING OFFICER. The ...lerk will state the nomination.

The LEGISLATIVE CLERK. Nomination passed over. Frieda B. Hennock, of New York, to be a member of the Federal Communications Commission.

The PRESIDING OFFICER. The question is. Will the Senate advise and consent to the nomination?

Mr. BALL. Mr. President, I do not intend to make a lengthy speech about this nomination. I am opposed to it, and I want the Record to show that. So far as I can discover, the only in-vestigation, the only hearing, regarding this nomination, was a brief executive session of the subcommittee of the Committee on Interstate and Foreign Commerce. For several weeks the re-ports were that the nomination would never get out of committee. Then all of a sudden it was reported, with, I may say, somewhat suspicious haste. It is for a 7-year term on the Federal Com-munications Commission. In my opin-ion that is a tremendously important Commission. I think it is up to the Senate to satisfy itself—and frankly I am not satisfied; I do not know about the wisdom of the nomination one way or the other—that appointments to this Commission will really serve the best interests of the Nation.

I myself have observed some rather disturbing things about the Federal Communications Commission. I have heard more disturbing reports since this nomination was reported. I have heard a report, on what I consider reliable au-thority—and obviously in the past few days I have not had any opportunity to investigate it. I do not know whether it is true or not—which indicates that cer-tain interests, groups, who are greatly interested in this nomination, have a direct pipe line to the Federal Com-munications Commission, which we cer-tainly would not want to have occur. What the score is I do not know. So far as I can determine, Miss Hennock is a lawyer from New York, and I might point out that the late President Roosevelt never appointed a member of the Fed-eral Communications Commission from New York City, for the simple reason that New York City is the center of the radio industry, and he wanted to avoid any possibility of the industry itself hav-ing too much influence on the Commis-sion. So far as I can discover, she has had no experience in radio matters, and from what I can learn of her back-ground, frankly I do not think she is qualified for the job, and I want to be on record as opposed to her confirmation.

Mr. BREWSTER. Mr. President, I think the Senator from Minnesota has been very fair in his statement. As chairman of the subcommittee which in-vestigated this nomination for the Sen-ate Committee on Interstate and Foreign Commerce, which reported it by a vote of 8 to 0, with another member voting "present," I think the Senate should know what we have learned as to the circumstances.

Miss Hennock has been a member of the New York bar for 20 or 25 years. I hesitate to estimate the age of a lady, but I should say she is between 40 and 50 years old, so she is reasonably mature. She has had quite a brilliant record at the bar. She is a member now, which is somewhat unusual for a woman, of the third largest law firm in New York City, one of the most highly respected and distinguished, one composed almost ex-clusively of Republicans. She has had no experience in radio, as the Senator from Minnesota has said, which, it seemed to many of us, was perhaps most fortunate, because one who had been active in radio work, representing radio clients, would by that very fact come in under somewhat of a cloud. The com-mittee took into consideration her breadth of experience and training and recognized abilities.

I may say that one of her most earnest sponsors was John W. Davis, of New York, who certainly is a leader of the New York bar, and who vouched most earnestly for her capacity and character. And from many other quarters there have come most earnest testimonials as to the character and competency of this woman.

Obviously only the future can tell how well she can fulfill these responsibilities. I can say that we in our committee, share the concern which the Senator from Minnesota has experienced concerning the functioning of the Federal Commu-nications Commission. We think it needs new blood, and it was the con-sensus of those of us who became familiar with this matter through contact with many who were acquainted with her and through various representations, that she would be well qualified to fit into this position, and we believed her confirma-tion was warranted and wise.

The PRESIDING OFFICER. The question is: Will the Senate advise and consent to this nomination?

The nomination was confirmed.

POSTMASTERS

EXECUTIVE REPORT OF A COMMITTEE

The following favorable report of a committee was submitted:

By Mr. LANGER, from the Committee on Post Office and Civil Service:

The nomination of Jack Bostwick to be postmaster at Bastrop, in the State of Louisiana.

On motion by Mr. LANGER, and by unanimous consent, it was

Ordered, That the said nomination be considered with those postmasters ap-pearing on today's calendar.

Mr. BARKLEY. Does the Senator in-tend that the nominations of postmasters shall be considered?

Mr. WHERRY. Yes.

The PRESIDING OFFICER. The clerk will state the nominations of post-masters on the calendar.

The legislative clerk proceeded to read the nominations of postmasters on the calendar.

The PRESIDING OFFICER. With-out objection, the nominations of post-masters will be confirmed en bloc.

Without objection the President will be notified of all nominations this day confirmed on the Executive Calendar.

Mr. WHERRY. Mr. President, are there any measures any Senator desires to bring up at this time, or is there any other matter that is desired to be con-sidered?

Mr. O'MAHONEY. Mr. President, may I ask the m___rity leader whether there is any int___ n to proceed with Calendar No. 125. ___ate Joint Resolu-tion 76?

Mr. WHERRY ___ at is the equal-rights amendment?

Mr. O'MAHONEY. Yes.

Mr. WHERRY. I believe the Senator who was particularly interested in the legislation stated that it would not be taken up at this time. I would not un-dertake to take it up.

Mr. O'MAHONEY. Very well.

CONDITIONAL ADJOURNMENT TO DECEMBER 31, 1948

Mr. WHERRY. I move that the Sen-ate do now adjourn.

The motion was agreed to; and (at 7 o'clock and 14 minutes a. m., Sunday, June 20, 1948) the Senate adjourned, the adjournment being under the pro-vision of House Concurrent Resolution 218, to Friday, December 31, 1948, at 12 o'clock meridian.