established the principle that a quorum present made valid any action by the House, although an actual quorum might not vote (I, 216, footnote; IV, 2932). And thenceforth the point of order as to a quorum was required to be that no quorum was present and not that no quorum had voted (IV, 2917). At the time of the establishment of this principle the Speaker revived the count by the Chair as a method of determining the presence of a quorum at a time when no record vote was ordered (IV, 2909). The Speaker has permitted his count of a quorum to be verified by tellers (IV, 2888), but did not concede it as a right of the House to have tellers under the circumstances (IV, 2916), claiming that the Chair might determine the presence of a quorum in such manner as he should deem accurate and suitable (IV, 2932). The Chair counts all members in sight, whether in the cloak rooms or within the bar (IV, 2970). Later, as the complement to the new view of the quorum, the early theory that the presence of a quorum is as necessary during debate or other business as on a vote was revived (IV, 2935–2949); also, a line of rulings made under the old theory were overruled, and it was established that the point of no quorum might be made after the House had declined to verify a division by tellers or the yeas and nays (IV, 2918–2926).

The absence of a quorum having been disclosed, there must be a quorum of record before the House may proceed to business (IV, 2952, 2953), and the point of no quorum may not be withdrawn after the absence of a quorum has been ascertained and announced by the Chair (IV, 2928–2931). But when an action has been completed, it is too late to make the point of order that a quorum was not present when it was done (IV, 2927). But where action requiring a quorum was taken in the ascertained absence of a quorum by ruling of a Speaker pro tempore, the Speaker on the next day ruled that the action was null and void (IV, 2964). But such absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason (IV, 2962), and where the assumption that a quorum was present when the House acted was uncontradicted by the Journal, it was held that this assumption might not be overthrown by expressions of opinion by Members individually (IV, 2961 . A point of no quorum may prevent the report of the Chairman of a Committee of the Whole. (Speaker Gillett, Dec. 13, 1924, p. 624, 68th Cong., 2d sess.) If a question as to a quorum is raised before the reading of the Journal, a quorum must be ascertained before the reading may begin (IV, 2732, 2733). While messages are received in the absence of a quorum they are not read (IV, 3522; V, 6600, 6650). No motion is in order on the failure of a quorum but the motions to

**§ 55. Relations of the quorum to acts of the House.**

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 1 of 22

App. 74

§§ 104, 105.

has allowed to fail (IV, 3499–3502). In one instance he communicated his omission to sign a bill through the committee appointed to notify him that Congress was about to adjourn (IV, 3504). A bill that had not actually passed having been signed by the President, he disregarded it and a new bill was passed (IV, 3498). Messages of the President giving notice of bills approved are entered in the Journal and published in the Congressional Record (V, 6593).

A message withholding approval of a bill, called a veto message, is

§ 104. Disapproval (or veto) of bills.

sent to the House in which the bill originated; but it has been held that such a message may not be returned to the President on his request (IV, 3521). A vetoed bill received in the House by way of the Senate is considered as if received directly from the President and supersedes the regular order of business (IV, 3537). A veto message may not be read in the absence of a quorum, even though the House be about to adjourn sine die (IV, 3522); but the message may be read and acted on at the next session of the same Congress (IV, 3522). When the President has been prevented by adjournment from returning a bill with his objections he has sometimes at the next session communicated his reasons for not approving (V, 6618–6620).

It is the usual but not invariable rule that a bill returned with the

§ 105. Consideration of a vetoed bill in the House.

objections of the President shall be voted on at once (IV, 3534–3536), but it has been held that the constitutional mandate that "the House shall proceed to consider" means that the House shall immediately proceed to consider it under the rules of the House, and that the ordinary motions under the rules of the House—to refer, to commit, or to postpone to a day certain—are in order. (Speaker Gillett, May 15, 1924, 68th Cong., 1st sess., p. 8663; IV, 3542–3550.) A motion to refer a vetoed bill, either with or without the message, has been held allowable within the constitutional mandate that the House "shall proceed to reconsider" (IV, 3550). But while the ordinary motion to refer may be applied to a vetoed bill, it is not in order to move to recommit it pending the demand for the previous question or after it is ordered (IV, 3551). (Speaker Gillett, Aug. 19, 1919, p. 3983.) A vetoed bill having been rejected by the House, the message was referred (IV, 3552). Committees to which vetoed bills have been referred have sometimes neglected to report (IV, 3523, 3550, footnotes). A vetoed bill may be laid on the table (IV, 3549), but it is still highly privileged and a motion to take it from the table is in order at any time (IV, 3549). Also a motion to discharge a committee from the consideration of such a bill is privileged (IV, 3532). While

[34]

# BILLS

[470]

# STAGES OF A BILL OF THE HOUSE.

## 1. Introduction:

§ 983. Introduc-
tion of a bill and
its progress to
final passage.

By a Member by laying the bill on the Clerk's table informally. A Member sometimes introduces a petition only, leaving to the committee the drawing of a bill, such a petition referred to a committee having jurisdiction of the subject giving authority to report a bill. Sometimes communications addressed to the House from the executive departments or from other sources are referred to committees by the Speaker and give authority for the committees to originate bills. Messages from the President also are referred by the Speaker or the House and give jurisdiction to the committees receiving them to originate bills.

## 2. Reference to a standing or select committee:

Public bills are referred under direction of the Speaker; private bills are indorsed with the names of the committees to which they go under the rule by the Members introducing them. Senate bills are referred under direction of the Speaker. A bill is numbered and printed when referred.

## 3. Reported from the committee:

Committees having leave to report at any time make their reports from the floor; other committees make their reports by laying them on the Clerk's table informally. The bill and the report are printed when reported.

## 4. Placed on the Calendar:

Occasionally a privileged bill is considered when reported; but usually it is placed with the unprivileged bills on the Calendar where it belongs under the rule by direction of the Speaker.

## 5. Consideration in Committee of the Whole:

Public bills which do not raise revenue or make or authorize appropriations of money or property do not go through this stage. All other bills are considered in Committee of the Whole. The stages of consideration in Committee of the Whole are: General debate; reading for amendment under the five-minute rule; order to lay aside with a favorable recommendation, or to rise and report; reporting of to the House.

[ 481 ]

§ 983.

## 6. Reading a second time in the House:

Bills not requiring consideration in Committee of the Whole are read a second time in full, after which they are open to debate and amendment in any part. Bills considered in Committee of the Whole are read a second time in full in that committee and when reported out, with or without amendments, are not read in full again, but are subject to further debate or amendment in the House unless the previous question is ordered at once.

## 7. Engrossment and third reading:

The question on House bills is taken on ordering the engrossment and third reading at one vote. If decided in the affirmative, the reading a third time usually takes place at once, by title. But any Member may demand the reading in full of the engrossed copy, in which case the bill is laid aside until it can be engrossed. Senate bills come to the House in engrossed form, and the question is put on third reading alone. When the question on engrossment and third reading of a House bill or third reading of a Senate bill is decided in the negative the bill is lost as much as if defeated on the final passage. The question on engrossment and third reading is not made from the floor, but is put by the Speaker as a matter of course.

## 8. Passage:

The question on the passage of a bill is put by the Speaker as a matter of course, without awaiting a motion from the floor.

## 9. Transmission to the Senate by message.

## 10. Consideration by the Senate:

In the Senate House bills are usually referred to committees for consideration and report, after which they have their several readings, with opportunities for debate and amendment. The same procedure takes place in the House as to bills sent from the Senate.

## 11. Return of, from the Senate without amendments:

If the Senate passes a House bill without amendment it returns it to the House, where it is at once enrolled on parchment for signature. A bill thus passed without amendment goes into

[482]

possession of the clerk, and is not laid before the House prior to enrollment. If the Senate rejects a House bill the House is informed. Similar procedure occurs when the House passes a Senate bill without amendment.

## 12. Return of, from the Senate with amendments:

House bills returned with Senate amendments go to the Speaker's table. If any Senate amendment requires consideration in Committee of the Whole the bill is referred by the Speaker informally to the standing committee having jurisdiction, and when that committee reports the bill with recommendations it is referred to Committee of the Whole House on the state of the Union, to be there considered and reported to the House itself. When no Senate amendment requires consideration in Committee of the Whole the bills come before the House directly from the Speaker's table.

## 13. Consideration of Senate amendments by the House:

When a bill with Senate amendments comes before the House, the House takes up each amendment by itself and may vote to agree to it, agree to it with an amendment, or disagree to it. If it disagrees it may ask a conference with the Senate or may send notice of its disagreement, leaving it to the Senate to recede or insist and ask the conference.

## 14. Settlement of differences by conference:

When disagreements are referred to conference, the managers embody their settlement in a report, which is acted on by each House as a whole. When this report is agreed to the bill is finally passed, and is at once enrolled for signature.

## 15. Enrollment on parchment:

The House in which a bill originates enrolls it.

## 16. Examination by the Committee on House Administration:

The chairman of the Committee on House Administration or Senate Committee on Rules and Administration as the case may be affixes to the bills examined a certificate that the bill has been found truly enrolled.

94047°—H. Doc. 769, 79–2——32   [483]

¶ 663;

## 17. Signing by the Speaker and President of the Senate:

The enrolled bill is first laid before the House of Representatives and signed by the Speaker, whether it be a House or Senate bill, after which it is transmitted to the Senate and signed by the president of that body.

## 18. Transmittal to the President of the United States:

The Chairman of the Committee on House Administration or the Chairman of the Senate Committee on Rules and Administration as the case may be carries the bills from his House to the President. In the House of Representatives a report of the bills taken to the President each day is made to the House and entered on its Journal.

## 19. Approval by the President:

If the President approve he does so with his signature.

## 20. Disapproval by the President:

When the President disapproves a bill he returns it to the House in which it originated, with a message stating that he disapproves, and giving his reasons therefor,

## 21. Action on, when returned disapproved:

The House to which a disapproved bill is returned has the message read and spread on its Journal. It may then consider at once the question of passing the bill notwithstanding the President's objections, or may postpone to a day certain, or refer to a committee for examination. The vote on passing the bill, notwithstanding the President's objections, must be carried by two-thirds. If the bill fails to pass in the House to which it is returned it remains there; but if it passes it is sent to the other House for action.

## 22. Filing with the Secretary of State:

When approved by the President a bill is deposited in the office of the Secretary of State; and when the two Houses have passed a bill, notwithstanding the President's objections, the presiding officer of the House which acts on it last transmits it to the Secretary of State.

[484]

THE STATE LIBRARY
AUSTIN, TEXAS

59TH CONGRESS }
2d Session }
HOUSE OF REPRESENTATIVES
{ DOCUMENT
No. 355

# HINDS' PRECEDENTS

OF THE

# HOUSE OF REPRESENTATIVES

OF THE

## UNITED STATES

INCLUDING REFERENCES TO PROVISIONS
OF THE CONSTITUTION, THE LAWS, AND DECISIONS
OF THE UNITED STATES SENATE

By

ASHER C. HINDS, LL. D.

Clerk at the Speaker's Table

## VOLUME IV

PUBLISHED BY AUTHORITY OF THE ACT OF CONGRESS
APPROVED MARCH 4, 1907

WASHINGTON
GOVERNMENT PRINTING OFFICE
1907

Chapter 72. The impeachment and trial of Samuel Chase.
Chapter 73. The impeachment and trial of James H. Peck.
Chapter 74. The impeachment and trial of West H. Humphreys.
Chapter 75. The first attempts to impeach the President.
Chapter 76. The impeachment and trial of the President.
Chapter 77. The impeachment and trial of William W. Belknap.
Chapter 78. The impeachment and trial of Charles Swayne.
Chapter 79. Impeachment proceedings not resulting in trial.
Chapter 80. Questions of privilege and their precedence.
Chapter 81. Privilege of the House.
Chapter 82. Privilege of the Member.

## VOLUME IV.

Chapter 83. The Journal and its approval.
Chapter 84. The making of the Journal.
Chapter 85. The quorum.
Chapter 86. The call of the House.
Chapter 87. The order of business.
Chapter 88. Special orders.
Chapter 89. Private and District of Columbia business.
Chapter 90. Petitions and memorials.
Chapter 91. Bills, resolutions, and orders.
Chapter 92. Approval of bills by the President.
Chapter 93. Bills returned without the President's approval.
Chapter 94. General appropriation bills.
Chapter 95. Authorization of appropriations on general appropriation bills.
Chapter 96. Appropriations in continuation of a public work.
Chapter 97. Legislation in general appropriation bills.
Chapter 98. Limitations in general appropriation bills.
Chapter 99. History and jurisdiction of the standing committees.
Chapter 100. History and jurisdiction of the standing committees.   (Continued.)
Chapter 101. History and jurisdiction of the standing committees.   (Continued.)
Chapter 102. General principles of jurisdiction of committees.
Chapter 103. Select and joint committees.
Chapter 104. Appointment of committees.
Chapter 105. Organization and procedure of committees.
Chapter 106. Reports of committees.
Chapter 107. The Committee of the Whole.
Chapter 108. Subjects requiring consideration in Committee of the Whole.
Chapter 109. Reports from the Committee of the Whole.
Chapter 110. Consideration "In the House as in Committee of the Whole."

## VOLUME V.

Chapter 111. The question of consideration.
Chapter 112. Conduct of debate in the House.
Chapter 113. References in debate to committees, the President, or the other House.
Chapter 114. Disorder in debate.
Chapter 115. Debate in Committee of the Whole.
Chapter 116. Reading of papers.
Chapter 117. Motions in general.
Chapter 118. The motion to adjourn.
Chapter 119. The motion to lay on the table.
Chapter 120. The previous question.
Chapter 121. The ordinary motion to refer.

Chapter 122. The motion to refer as related to the previous question
Chapter 123. The motion to reconsider.
Chapter 124. Dilatory motions.
Chapter 125. Amendments.
Chapter 126. The House rule that amendments must be germane.
Chapter 127. General principles as to voting.
Chapter 128. Voting by tellers and by ballot.
Chapter 129. The vote by yeas and nays.
Chapter 130. Division of the question for voting.
Chapter 131. Amendments between the Houses.
Chapter 132. General principles of conferences.
Chapter 133. Appointment of managers of a conference.
Chapter 134. Instruction of managers of a conference.
Chapter 135. Managers to consider only matters in disagreement.
Chapter 136. Privilege and form of conference reports.
Chapter 137. Consideration of conference reports.
Chapter 138. Messages and communications.
Chapter 139. Recess.
Chapter 140. Sessions and adjournments.
Chapter 141. The rules.
Chapter 142. Suspension of the rules.
Chapter 143. Questions of order and appeals.
Chapter 144. The Congressional Record.
Chapter 145. Amendments to the Constitution.
Chapter 146. Ceremonies.
Chapter 147. Service of the House.
Chapter 148. Miscellaneous.

# VOLUME VI.

### INDEX-DIGEST.

[A to G.]

# VOLUME VII.

### INDEX-DIGEST.

[H to P.]

# VOLUME VIII.

### INDEX-DIGEST.

[Q to Z.]

# Chapter LXXXIII.*

## THE JOURNAL AND ITS APPROVAL.

---

1. Provisions of the Constitution.  Section 2726.
2. The official record.  Section 2727.[1]
3. Title and copy.  Sections 2728–2730.
4. Reading and approval.  Sections 2731–2750.[2]
5. Business not transacted before approval.  Sections 2751–2759.[3]
6. Motions to amend, especially as to record of votes.  Sections 2760–2770.
7. Delay in approval.  Sections 2771–2774.
8. As to record of amendments and approval.  Sections 2775–2782.
9. Changes in as related to actual facts.  Sections 2783–2789.[4]
10. Changes after approval.  Sections 2790–2797.
11. As to entry of protests and declarations.  Sections 2798–2808.[5]
12. In general.  Sections 2809, 2810.

---

2726. **The Constitution requires the House to keep and publish a Journal, excepting from publication such parts as require secrecy.**

**Votes by yeas and nays and veto messages of the President are required by the Constitution to be spread on the Journal.**

The Constitution of the United States, in section 5 of Article I, provides:

Each House shall keep a Journal of its proceedings, and from time to time publish the same, excepting such parts as may in their judgment require secrecy; and the yeas and nays of the Members of either House on any question shall, at the desire of one-fifth of those present, be entered on the Journal.[6]

Also in section 7 of Article I:

Every bill which shall have passed the House of Representatives and the Senate shall, before it become a law, be presented to the President of the United States. If he approve he shall sign it, but if not he shall return it, with his objections, to that House in which it shall have originated, who shall enter the objections at large on their Journal and proceed to reconsider it.

---

* See Volume VI, Chapter CCVI.
[1] Printed and distributed by the Clerk.  Section 251 of Volume I.
  Office of journal clerk and its requirements.  Section 2644 of Volume III.
[2] Preparation and reading is not prevented by death of Clerk.  Section 237 of Volume I.
  Amendment of Congressional Record secondary to.  Section 6989 of Volume V.
[3] Administration of oath to Member-elect before.  Sections 171, 172 of Volume I.
[4] See also section 3091 of this volume.
[5] Clerk declines to entertain a protest at organization.  Section 80 of Volume I.
  Summary of precedents as to entry of protests.  Sections 2597, 2783 of this volume.
[6] Field v. Clark, 143 U. S., 649.

1

being in secret session, had passed the "act declaring war between Great Britain and her dependencies," whereupon Mr. George Poindexter moved to have inserted in the Journal a declaration in the following words:

George Poindexter, Delegate from the Mississippi Territory, not having a constitutional right to record his suffrage on the Journal of the House on the important question under consideration, and being penetrated with a firm conviction of the propriety of the measure, asks the indulgence of the House to express his own and the sense of his constituents,[1] in support of the honorable and dignified attitude which the Government of his country has assumed in vindication of its rights against the lawless violence and unprecedented usurpations of the Government of Great Britain.

This paper was read, and appeared in the Journal of the next day, whereupon Mr. Nathaniel Macon, of North Carolina, moved that it be expunged from the Journal. This motion was disagreed to—yeas 44, nays 62. A motion that the House proceed to consider the declaration was decided in the negative.

2809. The Parliamentary method of raising a committee to investigate an alleged error in the Journal has not been utilized.—On February 10, 1885,[2] a question being raised as to the correctness of the Journal, a motion was made that a committee be appointed to ascertain the facts in regard to the matter over which the error was alleged to occur. This motion was made in accordance with the parliamentary principle laid down in Jefferson's Manual. The motion was not agreed to.

2810. Certified extracts of the Journal are admitted as evidence in the courts of the United States.—The Statutes of the United States provide:

Extracts from the Journals of the Senate, or of the House of Representatives, and of the Executive Journal of the Senate when the injunction of secrecy is removed, certified by the Secretary of the Senate or by the Clerk of the House of Representatives, shall be admitted as evidence in the courts of the United States, and shall have the same force and effect as the originals would have if produced and authenticated in court.[3]

---

[1] Mr. Poindexter must have wished to enter this expression in the Journal, for he had the right of debate and frequently exercised it. (For an instance see Annals, March 12, 1812, pp. 1201–1204.)

[2] Second session Forty-eighth Congress, Record, pp. 1497–1500; Journal, p. 508.

[3] See Revised Statutes, sec. 895.

# Chapter LXXXV[*]

## THE QUORUM.[1]

1. Provision of the Constitution.   Section 2884.
2. Interpretation of the Constitutional provision.   Sections 2885–2894.
3. Ruling of Mr. Speaker Reed as to quorum present.   Sections 2895–2904.
4. Rule for counting a quorum and its interpretation.   Sections 2905–2908.[2]
5. Reestablishment of the Speaker's count.   Section 2909.[3]
6. Review of Senate practice.   Sections 2910–2915.[4]
7. Speaker's count final.   Section 2916.
8. Making the point of no quorum.   Sections 2917–2931.
9. All business, including debate, suspended by failure of quorum.   Sections 2932–2965.[5]
10. Failure of quorum in Committee of the Whole.   Sections 2966–2979.

**2884. A majority of the House constitutes a quorum to do business.—** The Constitution of the United States provides in Article 1, section 5, that—

A majority of each [House] shall constitute a quorum to do business.

**2885. Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constitutes the quorum required by the Constitution.—**On July 19, 1861,[6] Mr. Charles B. Sedgwick, of New York, moved the previous question on the engrossment of a joint resolution to provide for the selection of a site for the Naval Academy. Fifty-two Members having voted in favor of and 41 Members having voted against seconding the same, the Speaker[7] declared that the previous question was seconded.[8]

---

[*] See Volume VI, Chapter CCVIII.
[1] A majority of a committee is a quorum.   Section 4540 of this volume.
Quorum of Senate sitting for impeachment trial.   Section 2063 of Volume III.
Senate counted during impeachment trial.   Section 2105 of Volume III.
As to quorum of managers in impeachment trial.   Section 2035 of Volume III.
[2] Principle that legislator detained by force may be counted.   Section 356 of Volume I.
[3] See also section 1653 of Volume III.
Illustration of former practice of ascertaining presence of.   Section 2733 of this volume.
[4] Elaborate Senate discussion.   Section 630 of Volume I.
[5] Oath administered to Members in absence of.   Sections 174–178 of Volume I.
Must be present before reading of Journal.   Section 2733 of this volume.
Motion to reconsider in absence of.   Sections 5606–5608 of Volume. V.
Point of no quorum held dilatory.   Sections 5724–5730 of Volume V.
[6] First session Thirty-seventh Congress, Journal, p. 117; Globe, p. 210.
[7] Galusha A. Grow, of Pennsylvania, Speaker.
[8] The previous question no longer requires a second.   (See sec. 5443 of Vol. V of this work.)

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 13 of 22
App. 86

2937. On March 7, 1838,[1] during the debate in Committee of the Whole on an appropriation bill, Mr. John Reed, of Massachusetts, said he had some remarks to make, but there was no House to make them to. The Chair then appointed tellers to count the House, when it was found that there were but 72 Members in their seats—not a quorum. So the committee rose and reported the fact to the House.

2938. On February 24, 1875,[2] the Speaker,[3] in the course of a decision, said:

If any gentleman raises the question that business is proceeding without the presence of a quorum, it is within the competence of the Chair to decide that a quorum is present; and he will not allow the business of the House to be interrupted by any dilatory proceeding. He assumes the responsibility for that purpose of declaring that a quorum is present, because no business can proceed without a quorum. Even a gentleman speaking is entitled to have a quorum present. If the point be raised, a gentleman addressing the Chair may be taken off the floor by any Member raising the point that no quorum is present.

2939. On February 12, 1877,[4] a question of order was raised that debate could not proceed without a quorum.

In the course of the discussion of the question Mr. Nathaniel P. Banks, of Massachusetts, a former Speaker, said:

If any Member states that a quorum is not present, the Speaker counts the House, as he is bound to do, and if a quorum is found not to be present, business is suspended and a motion for a call of the House may be made.

The Speaker[5] said: "The House is not a House without a quorum," and the debate was not permitted to proceed.

2940. On Wednesday, January 21, 1891,[6] the Journal of the proceedings of yesterday's sitting having been read, and the question being on its approval;

Mr. William McKinley, jr., of Ohio, demanded the previous question, when Mr. W. C. P. Breckinridge, of Kentucky, made the point of order that no quorum was present.

The Speaker[7] ruled that the point of order that no quorum was present could only be raised when that fact was established by a division.[8]

---

[1] Second session Twenty-fifth Congress, Globe, p. 224.
[2] Second session Forty-third Congress, Record, p. 1733.
[3] James G. Blaine, of Maine, Speaker.
[4] Second session Forty-fourth Congress, Record, pp. 1488, 1489.
[5] Samuel J. Randall, of Pennsylvania, Speaker.
[6] Second session Fifty-first Congress, Journal, p. 162; Record, p. 1630.
[7] Thomas B. Reed, of Maine, Speaker.
[8] The actual transaction is recorded as follows in the Record:

Mr. McKinley. Mr. Speaker——

The Speaker. The gentleman from Ohio [Mr. McKinley] is recognized.

Mr. Breckinridge, of Kentucky. I raise the question of order——

Mr. McKinley. I move the previous question.

Mr. Breckinridge, of Kentucky (continuing). That there is no quorum in the House to do business.

The Speaker. The gentleman from Ohio [Mr. McKinley] moves the previous question.

Mr. Breckinridge, of Kentucky. I raise the question of order that there is no quorum present.

The Speaker. That will be determined by the vote. As many as are in favor of ordering the previous question will say "aye."

Mr. J. Warren Keifer, of Ohio, said:

Mr. Chairman, I make the point of order that the gentleman from Illinois in charge of the bill has the floor, making a speech, and the distinguished gentleman from Mississippi is not entitled to take him off the floor.

After debate the Chairman [1] held:

The Chair is of opinion that a question of order involving the presence of a quorum may be raised, and the Chair will count to ascertain whether a quorum is present.

**2950. A quorum not being present, no motion is in order but for a call of the House or to adjourn.**—On February 5, 1846,[2] the House was in Committee of the Whole House on the state of the Union, considering joint resolution (No. 5) of notice to Great Britain to "annul and abrogate" the convention between Great Britain and the United States of the 6th of August, 1827, relative to the country "on the northwest coast of America, westward of the Stony Mountains," commonly called Oregon. Finding itself without a quorum, the committee rose. A motion to adjourn having been decided in the negative, on motion of Mr. George W. Jones, of Tennessee, a call of the House was ordered; and the roll having been called as far as the name of Stephen Adams, of Mississippi, a motion was made by Mr. Robert B. Rhett, of South Carolina, that further proceedings in the call be dispensed with. And the question being put, it was decided in the affirmative.

A motion was made by Mr. Howell Cobb, of Georgia, that the House take a recess until 7.30 o'clock.

Mr. Robert C. Winthrop, of Massachusetts, raised the question of order that, a quorum of Members not being present, it was not competent for the Chair to entertain a motion for a recess.

The Speaker [3] decided that, it appearing from the record that there was not a quorum present, no motion was in order except for a call of the House or to adjourn.

In this decision the House acquiesced.

**2951. The absence of a quorum having been disclosed, the only proceedings in order are the motions to adjourn or for a call of the House; and not even by unanimous consent may business proceed.**—On May 24, 1872,[4] the House, while considering the bill of the Senate (No. 569) for the relief of Thomas B. Wallace, of Lexington, Mo., found itself without a quorum on the vote on the passage of the bill. A call of the House was ordered, and then a motion to adjourn was defeated, a yea and nay vote being had on each of these motions.

At this point Mr. James A. Garfield, of Ohio, proposed that by unanimous consent further proceedings under the call be dispensed with, and that the bill be acted on by a rising vote, on the assumption that a quorum was present.

The Speaker pro tempore [5] said:

The vote upon the passage of this bill by yeas and nays has disclosed the fact that there is not a quorum in the House. The House thereby becomes constitutionally disqualified to do further business,

---

[1] Edgar D. Crumpacker, of Indiana, Chairman.
[2] First session Twenty-ninth Congress, Journal, p. 355.
[3] John W. Davis, of Indiana, Speaker.
[4] Second session Forty-second Congress, Globe, p. 3855.
[5] Clarkson N. Potter, of New York, Speaker pro tempore.

except that business which the Constitution authorizes the House to do when a quorum is not present, to adjourn, or to order a call of the House, and the proceedings in respect to that bill fell, and the bill, should there be a quorum in the House, must again come before the House for its passage.

**2952. The absence of a quorum having been disclosed, there must be a quorum of record before the House may proceed to business.**—On February 28, 1849,[1] at an evening session, Mr. Caleb B. Smith, of Indiana, moved a resolution to close debate in Committee of the Whole on a bill to establish the Territorial government of New Mexico.

On this motion the question stood, ayes 41, noes 64, no quorum voting. On a motion for a call of the House no quorum voted.

Mr. Samuel F. Vinton, of Ohio, proposed that by common consent they go into committee and take up the amendments of the Senate to the Indian appropriation bill.

The Speaker[2] said the Chair was obliged to state to the gentleman from Ohio that the last two votes showed that there was no quorum present. There must be a quorum of record before the House could proceed to business.

**2953.** On February 11, 1901,[3] Mr. James D. Richardson, of Tennessee, moved that the House adjourn. The yeas and nays being demanded and ordered, there appeared, yeas 59, nays 80, answering present, 6.

The result being announced, Mr. William S. Knox, of Massachusetts, announced his purpose to call up a report of the Committee of the Whole House on the state of the Union, in relation to an occurrence in the committee.

The Speaker said:

The Chair, however, is compelled to take cognizance of the fact that the House is without a quorum and not in a position to do business.

**2954. The absence of a quorum being disclosed, a motion to fix the day to which the House shall adjourn may not be entertained.**

**A motion which was by the rules more highly privileged than the motion to adjourn was not entertained after an affirmative vote on a motion to adjourn.**

On February 21, 1894[4] no quorum appearing, Mr. Richard P. Bland, of Missouri, moved that the House do now adjourn, pending which motion, Mr. J. Fred C. Talbott, of Maryland, moved that when the House adjourn to-day it be to meet on Friday next.

The Speaker[5] declined to entertain the motion of Mr. Talbott, for the reason that a quorum was required to decide it, the roll of the last preceding vote not having disclosed a quorum.

The question being put, Will the House adjourn? it was decided in the affirmative, yeas 141, nays 107.

Before the result of the foregoing vote was announced, Mr. Julius C. Burrows, of Michigan, moved that when the House adjourn to-day it be to meet on Friday next.

---

[1] Second session Thirtieth Congress, Globe, p. 624.
[2] Robert C. Winthrop, of Massachusetts, Speaker.
[3] Second session Fifty-sixth Congress, Record, pp. 2286, 2287.
[4] Second session Fifty-third Congress, Journal, p. 188.
[5] Charles F. Crisp, of Georgia, Speaker.

The Speaker [1] overruled the point of order on the ground that when the order was made the absence of a quorum was not disclosed by any proceeding in the House and did not appear in the Journal of the House, and that the statements of Members on the subject were merely expressions of their individual opinions.

**2962.  The absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason.**—On June 9, 1856,[2] Mr. George W. Jones, of Tennessee, moved that the Journal of the preceding legislative day be amended by striking out the notice of a bill filed by Mr. Edwards, there being no quorum present on that day.[3]

It was objected in opposition to this motion that the Journal of that day did not show the absence of a quorum; but Mr. Jones urged that it was a matter of common knowledge that there was no quorum present.  This was not denied.

Various attempts to dispose of the motion were made, but failed for lack of a quorum until June 20, when Mr. Jones's motion was laid on the table, yeas 89, nays 38.

**2963.  When a vote taken by yeas and nays shows that no quorum has voted it is the duty of the Chair to take notice of that fact.**—On June 5, 1884,[4] the House having under consideration a bill forfeiting certain land grants, the yeas and nays were ordered and taken on the passage of the bill.  After the vote had been taken the Speaker [5] announced that no quorum had voted and that the bill had not passed.

Upon the question being made by Mr. Poindexter Dunn, of Arkansas, that no Member had made the point that a quorum had not voted, the Speaker decided that when a vote was taken by yeas and nays it would be entered on the Journal of the House, and it was the duty of the Chair to take notice of the fact that a quorum had not voted and that the bill had not passed by a constitutional vote.

**2964.  The previous question having been ordered on a bill by unanimous consent in the absence of a quorum, the Speaker on the next day ruled that the action was null and void.**—On February 19, 1873,[6] pending the demand for the previous question on the bill of the House (No. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by the States in the war of 1812, a quorum failed to vote and a call of the House was ordered.  After the roll had been called, the doors closed, and excuses offered, on motion of Mr. Leonard Myers, of Pennsylvania, by unanimous consent, this order was agreed to.

*Ordered,* That all further proceedings under the call be dispensed with, that the previous question shall be considered as seconded, and the main question ordered, upon the bill of the House (H. R. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by said States in the war of 1812, and that the House shall now adjourn.

The House accordingly, at 12 o'clock m., adjourned.

On the next day, the Journal having been read, Mr. Nathaniel P. Banks, of Massachusetts, made the point of order that the main question on the bill of the

---

[1] Charles F. Crisp, of Georgia, Speaker.
[2] First session Thirty-fourth Congress, Journal, pp. 1079, 1095; Globe, pp. 1379, 1427.
[3] Formerly bills were introduced by leave, and a previous notice was required.
[4] First session Forty-eighth Congress, Journal, p. 1385.
[5] John G. Carlisle, of Kentucky, Speaker.
[6] Third session Forty-second Congress, Journal, p. 447; Globe, p. 1518.

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 17 of 22          App. 99

# Chapter XCI.*

## BILLS, RESOLUTIONS, AND ORDERS.

1. Rules for introduction and reference of bills, petitions, etc.   Sections 3364–3366.
2. Forms and practice in relation to bills and resolutions.   Sections 3367–3382.
3. Practice as to consideration of.   Sections 3383–3390.
4. Reading, amendment, and passage.   Sections 3391–3428.
5. Enrolling and signing of.   Sections 3429–3459.
6. Recall of bills from other House for correction of errors.   Sections 3460–3481.

3364. **Petitions, memorials, and bills are introduced by the Member delivering them to the Clerk.**

The reference of a private bill is indorsed on it by the Member introducing it, while the reference of a public bill is made by the Speaker.

Any petition or memorial of an obscene or insulting nature may be returned by the Speaker to the Member presenting it for reference.

Rules for correction of erroneous reference of private and public bills.

Petitions, memorials, and bills referred by delivery to the Clerk are entered on the Journal and Record.

The erroneous reference of a petition or private bill referred by the Member under the rule does not confer jurisdiction on the committee receiving it.

Sections 1, 2, and 3 of Rule XXII provide for the introduction, reference to committees, and change of reference of petitions, memorials, bills, and resolutions.

1. Members having petitions or memorials or bills of a private nature to present may deliver them to the Clerk, indorsing their names and the reference or disposition to be made thereof; and said petitions and memorials and bills of a private nature, except such as, in the judgment of the Speaker, are of an obscene or insulting character, shall be entered on the Journal with the names of the Members presenting them, and the Clerk shall furnish a transcript of such entry to the official reporters of debates for publication in the Record.

2. Any petition or memorial or private bill excluded under this rule shall be returned to the Member from whom it was received; and petitions and private bills which have been inappropriately referred may, by direction of the committee having possession of the same, be properly referred in the manner originally presented; and an erroneous reference of a petition or private bill under this clause shall not confer jurisdiction upon the committee to consider or report the same.

3. All other bills, memorials, and resolutions may, in like manner, be delivered, indorsed with the names of Members introducing them, to the Speaker, to be by him referred, and the titles and references thereof and of all bills, resolutions, and documents referred under the rules shall be entered on

---

*See Volume VII, Chapter CCXVII.

282

**Enrolled bills are presented to the President by the committee of enrollment.**

**Notice of the signature of a bill by the President is sent by message to the House in which it originated, and that House informs the other.**

**An enrolled bill, when signed by the President, is deposited in the office of Secretary of State.**

Jefferson's Manual, in Section LXVIH, provides:

> When a bill has passed both Houses of Congress the House last acting on it notifies its passage to the other, and delivers the bill to the Joint Committee of Enrollment,[1] who see that it is truly enrolled in parchment. When the bill is enrolled it is not to be written in paragraphs, but solidly, and all of a piece, that the blanks between the paragraphs may not give room for forgery.[2] (9 Grey, 143.) It is then put into the hands of the Clerk[3] of the House of Representatives to have it signed by the Speaker.[4] The Clerk then brings it by way of message to the Senate[5] to be signed by their President. The Secretary of the Senate return it to the Committee of Enrollment, who presents it to the President of the United States. If he approve, he signs, and deposits it among the rolls in the office of the Secretary of State, and notifies by message the House in which it originated that he has approved and signed it; of which that House informs the other by message.

**3430. The printing, enrolling, signing, and certification of bills on their passage between the two Houses are governed by usages founded on former joint rules.**

**The certification and presentation of enrolled bills to the President is governed by usage founded on former joint rules.**

**The Committee on Enrolled Bills reports, for entry on the Journal, the date of presentation of bills to the President.**

**History of certain of the joint rules and their abrogation in 1876.**

From a very early date[6] the House and Senate had joint rules, a large portion of which related to the handling of bills; and although they have since been allowed to lapse, the usages instituted by them remain. These rules relating to bills are:

---

[1] A bill passed before the appointment of the Committee on Enrolled Bills is enrolled by the Clerk and presented directly to the Speaker for his signature. (See Journal, p. 17, first session, Fifty-second Congress, December 23, 1891.)

[2] Under the law as to enrolling bills by printing this regulation as to paragraphs is not observed. Bills which originate in the House are enrolled by the enrolling clerk of the House, while those originating in the Senate are enrolled under direction of that body.

[3] The chairman of the Committee on Enrolled Bills certifies the bills as correctly enrolled. Formerly he made this report from his place on the floor (see Globe, p. 375, first session Thirty-third Congress), but now he lays the bills, each with his certificate as to its correctness, on the Speaker's table, to be placed before the House and signed by the Speaker.

[4] The signing by the Speaker of the House of Representatives and by the President of the Senate in open session of an enrolled bill is an official attestation by the two Houses of such bill as one that has passed Congress. When approved by the President and deposited in the State Department according to law, its authentication is completed and unimpeachable. (Field v. Clark, April 15, 1892, 143 United States Supreme Court Reports, p. 649.)

[5] In the early days of the House the chairman of the Committee on Enrolled Bills took the message to the Senate (see first session Twelfth Congress, Annals, p. 203); but under the present practice the Clerk, or one of his assistants, takes all enrolled bills signed by the Speaker (whether House or Senate bills) and conveys them to the Senate as a message from the House. As all enrolled bills are signed first by the Speaker, the Senate Committee on Enrolled Bills send their bills to the House Committee on Enrolled Bills, who report them to the House for signature as they report House bills. These Senate bills bear a certificate from the chairman of the Senate Committee on Enrolled Bills.

[6] The joint rules were agreed to November 13, 1794, but many of them antedated even that time. (First session Third Congress, Journal, pp. 230, 231.)

App. 92

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 19 of 22

Objection having been made, the following resolution was offered by Mr. John Dalzell, of Pennsylvania, and agreed to by the House:

*Ordered*, That the clerk be directed to return to the Senate the enrolled bill (S. 5718) providing for the sale of sites for manufacturing or industrial plants in the Indian Territory, with the information that the House has considered the request of the Senate that the House vacate the action of the Speaker in signing said enrolled bill, and that the unanimous consent necessary to enable such action to be taken was refused.

**3458. The Speaker may not sign an enrolled bill in the absence of a quorum.**—On May 20, 1826,[1] Mr. Jacob Isacks, of Tennessee, from the Joint Committee for Enrolled Bills, reported that the committee had examined an enrolled bill entitled "An act making appropriations for the public buildings in Washington, and for other purposes," and had found the same to be duly enrolled.

When, a quorum not being present, objection was made by a Member to signing the said bill by the Speaker.[2]

And thereupon the House adjourned.

**3459. Proceedings in correcting an error where the Speaker had signed the enrolled copy of a bill that had not passed.**—On March 14, 1864,[3] the Speaker stated to the House that—

the Secretary of the Senate having inadvertently, on Friday last, announced the passage by the Senate of the Court of Claims bill No. 116, instead of the bill of the House (H. R. 116), and having since corrected said error by certifying to the bill which actually did pass, the Speaker, with the consent of the House, will cause the Journal of that day to be amended by the insertion of the title of the bill which actually passed, in lieu of the one originally announced; and when reported by the committee he will sign the proper enrolled bill, canceling his signature of H. R. C. C. 116.

The unanimous consent of the House was given to the course indicated by the Speaker.[4]

**3460. It is a common occurrence for one House to ask of the other the return of a bill, for the correction of errors or otherwise.**—On April 11, 1810,[5] the House proceeded to consider the amendments of the Senate to the bill entitled "An act regulating the Post-Office Establishment."

Mr. Ezekiel Bacon, of Massachusetts, moved that the following words, "Section 25, lines 2 and 3, strike out the words 'each postmaster, provided each of his letters or packets shall not exceed half an ounce in weight,'" appearing to have been an interpolation in the amendments sent from the Senate after the same were received by this House, be expunged therefrom.

Pending consideration a message was received from the Senate requesting the return of the bill and amendments,

it having been discovered that an inaccuracy had taken place in stating the amendments of the Senate.

The House ordered the bill returned, and the same day a message from the Senate returned to the House the corrected amendments.

[1] First session Nineteenth Congress, Journal, p. 639.
[2] John W. Taylor, of New York, Speaker.
[3] First session Thirty-eighth Congress, Journal, p. 377; Globe, p. 1096.
[4] Schuyler Colfax, of Indiana, Speaker.
[5] Second session Eleventh Congress, Journal, pp. 355, 356 (Gales and Seaton ed.); Annals, pp. 650 (Vol. I) and 1769 (Vol. II).

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 20 of 22        App. 93

# Chapter XCII.*

## APPROVAL OF BILLS BY THE PRESIDENT.

---

1. Provision of the Constitution.  Section 3482.
2. As to resolutions requiring approval.  Sections 3483, 3484.
3. Bills approved are deposited with the Secretary of State.  Section 3485.
4. Delay in presenting bills to President.  Sections 3486–3488.[1]
5. Practice of the President in approving.  Sections 3489–3492.
6. Approval after adjournment for a recess.  Sections 3493–3496.
7. Exceptional instance of approval after final adjournment.  Section 3497.
8. Error in approval.  Section 3498.
9. Notification of the Houses as to approvals.  Sections 3499–3504.
10. Return of bills by President for correction of errors.  Sections 3505–3519.

---

3482. Every bill which has passed the two Houses is presented to the President for his signature if he approve.

In general, orders, resolutions, and votes in which the concurrence of the two Houses is necessary must be presented to the President on the same condition as bills.

A concurrent resolution providing for final adjournment of the two Houses is not presented to the President for approval.

The Constitution of the United States, in section 7 of Article I, provides:

Every bill which shall have passed the House of Representatives and the Senate shall, before it become a law, be presented to the President of the United States; if he approve, he shall sign it, etc.

Every order, resolution, or vote to which the concurrence of the Senate and House of Representatives may be necessary (except on a question of adjournment) shall be presented to the President of the United States, and before the same shall take effect shall be approved by him, or, being disapproved by him, shall be repassed by two-thirds of the Senate and House of Representatives, according to the rules and limitations prescribed in the case of a bill.

3483. Although the requirement of the Constitution seems specific, the practice of Congress has been to present to the President for approval only such concurrent resolutions as are legislative in effect.—On January 27, 1897, Mr. David B. Hill, of New York, from the Committee on the Judiciary, submitted to the Senate a report[2] which that committee had been directed to make on the subject of joint and concurrent resolutions and their approval by the President. The subject involved the construction of a portion of section 7 of Article I of the

---

* See Volume VII, Chapter CCXVIII.
[1] Method of taking enrolled bills to the President.  Section 2601 of Volume III.
[2] Senate Report No. 1335, second session Fifty-fourth Congress.

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 21 of 22

Within the experience of the Chair in the Senate no concurrent resolution has ever been sent to the President of the United States, nor has he ever signed one. The Chair has endeavored faithfully to find out how concurrent resolutions escape the provision of the Constitution. He has not been able to succeed.

This led to debate in the course of which the report of the Judiciary Committee in a former Congress was quoted with approval.[1]

**3485. A statute requires that bills signed by the President shall be received by the Secretary of State from the President.**

**When a bill returned without the President's approval is passed by the two Houses, the Secretary of State receives the bill from the presiding officer of the House in which it last was passed.**

The act approved December 28, 1874,[2] provides:

Whenever a bill, order, resolution, or vote of the Senate and House of Representatives, having been approved by the President, or not having been returned by him with his objections, becomes a law or takes effect, it shall forthwith be received by the Secretary of State from the President; and whenever a bill, order, resolution, or vote is returned by the President with his objections, and on being reconsidered is agreed to be passed and is approved by two-thirds of both Houses of Congress, and thereby becomes a law or takes effect, it shall be received by the Secretary of State from the President of the Senate or Speaker of the House of Representatives, in whichsoever House it shall last have been so approved, and he shall carefully preserve the originals.

**3486. Instance wherein a bill enrolled and signed by the presiding officers of the two Houses of one session was sent to the President and approved at the next session.**—On December 8, 1904,[3] Mr. Frank C. Wachter, of Maryland, chairman of the Committee on Enrolled Bills, offered the following:

Whereas the bill (H. R. 10516) for the relief of Edward J. Farrell passed both Houses at the second session of this Congress, but was enrolled too late to receive the signatures of the presiding officers of the two Houses and be presented to the President of the United States before the adjournment of the said second session; and

Whereas the bill (H. R. 11444) to grant certain lands to the State of Ohio passed both Houses and was signed by the presiding officers thereof, but failed to be presented to the President of the United States before the adjournment of the said second session: Therefore,

*Resolved by the House of Representatives (the Senate concurring),* That the said bills be, and are hereby, ordered to be reenrolled for the signatures of the presiding officers of the two Houses and for presentation to the President of the United States.

The resolution was agreed to by the House.

On December 12,[4] in the Senate, the resolution was referred to the Committee on Rules and was not reported therefrom.

The Senate having taken no action on the resolution, the bill (H. R. 10516) was reenrolled as of the third session, signed by the presiding officers, and transmitted to the President, who signed it.[5]

---

[1] See section 3483 of this chapter.
[2] 18 Stat. L., p. 294. A law on this subject had existed from 1789 and had been amended in 1838. (See sec. 204 of Revised Statutes.)
[3] Third session Fifty-eighth Congress, Record, p. 66.
[4] Record, p. 125.
[5] See history of bill (H. R. 10516) in indexes of Journal and Record.

Case 1:08-cr-00055-RLV-DCK   Document 127-16   Filed 10/30/09   Page 22 of 22          App. 95