The bill (H. R. 11444) relating to Ohio lands, was transmitted to the President without reenrollment, appearing as a bill of the second session.[1]  After receiving an opinion from the Attorney-General the President signed the bill.[2]

3487. Enrolled bills pending at the close of a session were at the next session of the same Congress ordered to be treated as if no adjournment had taken place.—On August 21, 1856,[3] Mr. James Pike, of New Hampshire, by unanimous consent, presented the following resolution:

*Resolved (the Senate concurring),* That such bills as passed both Houses at the last session and for want of time were either not presented to the two Houses for the signatures of their presiding officers, or, having been thus signed were not presented to the President for approval, be now reported or presented to the President as if no adjournment had taken place.

---

[1] The chairman of the Committee on Enrolled Bills took this action after he had considered the following precedents furnished to him by Mr. William Tyler Page, for many years clerk of the Committee on Accounts:

"Touching the matter of the right of the chairman of the Committee on Enrolled Bills to present to the President of the United States a bill passed at the last session of Congress too late to be presented to the President before adjournment, I beg to state that I have had my memory as to a precedent for such action confirmed by the Journals of the Fiftieth Congress.  In the first session of that Congress there were passed by both Houses of Congress bills of the following numbers and titles, to wit:

"H. R. 11139, an act to authorize the building of a bridge or bridges across the Mississippi River at La Crosse, Wis.

"H. R. 11262, an act to authorize the construction of bridges across the Kentucky River and its tributaries, by the Richmond, Irvine and Beattyville Railroad Company.

"H. R. 1152, an act for the relief of the legal representatives of Eliza M. Ferris.

"These several acts, as stated, were passed by both Houses and, on October 17, 1888, first session Fiftieth Congress, page 2932 of the Journal of the House, they were reported by the chairman of the Committee on Enrolled Bills as having been examined by said committee and found duly enrolled, whereupon, said bills were signed by the Speaker of the House.

"These acts were not presented to the President of the United States until the succeeding session of Congress, when, on December 7, 1888, there appears this entry in the Journal:

"'Mr. Kilgore, from the Committee on Enrolled Bills, reported that he did on yesterday present to the President of the United States bills of the House numbered H. R. 11262, H. R. 11139, H. R. 1152.'  (House Journal, p. 57, second session Fiftieth Congress.)

"In the Journal of the same session, on page 115, there appears the following entry:

"'A message in writing was received from the President of the United States  *  *  *  informing the House that he did at the dates named approve bills of the House of the following titles, namely:

"'On the 10th, H. R. 11139, an act to authorize the building of a bridge or bridges across the Mississippi River at La Crosse, Wis.

"'H. R. 11262, an act to authorize the construction of bridge or bridges across the Kentucky River and its tributaries, by the Richmond, Irvine and Beattyville Railroad Company.

"'H. R. 1152, an act for the relief of the legal representatives of Eliza M. Ferris.'"

[2] See history of bill (H. R. 11444) in the indexes.

[3] Second session Thirty-fourth Congress, Journal, p. 1352; Globe, p. 4.

In this case Congress was immediately convened to pass an army appropriation bill, which had failed at the regular session.  Several bills were left enrolled but not signed at the adjournment.  At that time a joint rule presented the resumption of business from a former session immediately.

Formerly the joint rules provided that no bill from one House should be sent for concurrence to the other on either of the last three days of the session, and also that no bill should be sent to the President for his approval on the last day of the session.  On June 20, 1874, a proposition to suspend these rules caused some debate as to the useful purpose they were intended to serve, and upon the fact, then alleged, that they had uniformly been suspended since 1822.  They were suspended on this occasion.  (First session Forty-third Congress, Record, p. 5309.)

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 1 of 23

tion upon it, or else, Congress taking a recess under such circumstances and thus preventing him from communicating with them, the bill does not become a law because by their own act of adjournment they have prevented him from having the time for consideration which is intended by the Constitution. [Here follows a brief reference to the clause of the Constitution providing for the return of a vetoed bill.] * * * All these provisions indicate that in order to enable the President to return a bill the House should be in session; and if by their own act they see fit to adjourn and deprive him of the opportunity to return the bill, with his objections, and are not present themselves to receive and record these objections and to act thereon, the bill can not become a law unless ten days shall have expired during which the President will have had the opportunity thus to return it.[1] There is no suggestion that he may return it to the Speaker, or Clerk, or any officer of the House; but the return must be made to the House as an organized body."

Hon. George F. Edmunds, President pro tempore of the Senate, in a note to President Arthur under date of December 24, 1884, expressing a like opinion, says:

"A bill * * * has passed both Houses of Congress and was presented for my signature after both Houses have adjourned until 5th of January. This is more than ten days, and, if it were now presented to you, you could not return it with your objections. I do not know what the practice has been, but it would seem to me as if the bill could not become a law constitutionally; but if you think it can I will send it to you."

This note was probably not carefully considered, but it is of value as the impression of a lawyer and legislator of great ability and experience.

The Attorney-General, after discussing the nature of the recess in question, concludes that it is not an adjournment within the meaning of the clause of the Constitution under discussion. As the approval or disapproval of a bill by the President has been sometimes held to be a legislative act, required to be done while the Congress is in session, the Attorney-General finds difficulties in giving a definite opinion, and concludes upon the whole that the course indicated in the syllabus should be pursued.

On January 4, 1893,[2] on the reassembling of Congress after the recess, the President communicated to the Senate notice that he had approved sundry bills on December 22 and December 28, during the recess, but there appears no message of disapproval of any bill.

3497. An instance where the President signed a bill after the adjournment of Congress.—On May 16, 1864,[3] the House ordered—

that the Committee on the Judiciary be instructed to inquire and report to the House by what warrant or authority the act[4] entitled "An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States" was approved on the 12th day of March, 1863, and whether said act is still in force.

On June 11, 1864, Mr. James F. Wilson, of Iowa, from the committee, made this report:[5]

On the reception of this resolution the committee caused a note to be addressed to the Secretary of State, asking to be informed whether, "as a matter of fact, it appeared on the original files in the State Department that the act referred to was approved on the 12th day of March, 1863."

In reply to this note, the Secretary of State responded that "the original act is, to all appearances, regular in every respect of form; as to the date of its approval—that of 12th of March, 1863—the words

---

[1] This question was subject of a decision in Connecticut about 1904.
[2] Second session Fifty-second Congress, Record, p. 301.
[3] First session Thirty-eighth Congress, Globe, p. 2290.
[4] See 12 Stat. L., p. 820.
[5] House Report No. 108, first session Thirty-eighth Congress.

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 2 of 23

and figures 'approved March 12, 1863,' are in the handwriting of the President, and followed by his signature."

Thus it appears, from the original files in the State Department, that said act was approved March 12, 1863, and this is true, in fact, as to the date of approval.

The section of the Constitution of the United States bearing upon this question reads as follows:

"If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress, by their adjournment, prevent its return, in which case it shall not be a law."

The committee are informed that in the great press of business immediately preceding the adjournment of Congress on the 4th of March, 1863, the act which is made the subject-matter of inquiry by the resolution of the House was passed to the Secretary of the Treasury for examination, as it related particularly to his Department. It did not reach the President again until after the adjournment of Congress, when it was approved by him under the belief that the last clause of the section of the Constitution, above quoted, was designed more especially to prevent Congress from enacting laws without the approval of the Executive, which might be done by the passage of bills by the two Houses, followed by an adjournment, before the President could examine and return them, were it not for the declaration that in such cases the bills shall not be laws; and did not relate to cases wherein the Executive should approve bills sent to him by Congress within ten days, even though an adjournment should occur before the return of the bills.

That there is force and plausibility in this position, a little reflection will discover to any mind; but the committee can not receive it as a correct interpretation of the Constitution.

The ten days' limitation contained in the section above quoted refers to the time during which Congress remains in session, and has no application after adjournment. Hence, if the Executive can hold a bill ten days after adjournment, and then approve it, he can as well hold it ten months before approval. This would render the laws of the country too uncertain, and could not have been intended by the framers of the Constitution.

The spirit of the Constitution evidently requires the performance of every act necessary to the enactment and approval of laws to be perfect before the adjournment of Congress.

The committee, therefore, conclude that the act referred to, approved March 12, 1863, is not in force; and in this conclusion the committee are unanimous.[1]

**3498. A bill that had not actually passed, having been enrolled and signed by the President of the United States, was disregarded by the Executive, and Congress passed another bill.**—On March 11, 1836,[2] the House considered a joint resolution (No. 2) to place the name of Benedict Alford on the pension roll. The Debates of March 18,[3] give the following explanation of the presentation of this resolution:

At the first session of the Twenty-third Congress a bill passed the House of Representatives granting pensions to Benedict Alford and Robert Brush, soldiers of the Revolutionary war. By the Journals of the Senate it appears that this bill was indefinitely postponed in that body, and the House of Representatives was so notified. And it is also so entered on the Journal of the House. The postponement of the bill in the Senate in the last hour of the session was inadvertently overlooked by the enrolling clerk, as well as by the Committee on Enrolled Bills in the House, and it was enrolled and signed by the officers of the two Houses, and presented to, and approved by, the President. A few days after the adjournment of Congress the error was discovered in the Clerk's office in the House of Representatives, and notice of the fact was immediately given to the War Department. The Secretary of War thereupon declined complying with the provisions of the bill, under the conviction that it was not a valid statute. At the last session of Congress the President communicated the fact to the Senate by message. No

---

[1] The act of July 2, 1864 (13 Stat. L., p. 375), was amendatory of the act "approved March 12, 1863," thereby indicating that the latter act was still considered a law. (See Globe, first session, thirty-eighth Congress, p. 2820, for debate on the bill S. 232.)

[2] First session Twenty-fourth Congress, Journal, pp. 470, 498, 525, 526; Debates, pp. 2747, 2881.

[3] Debates, p. 2881.

Case 1:08-cr-00055-RLV-DCK Document 127-17 Filed 10/30/09 Page 3 of 23

# Chapter CVII.[*]

## THE COMMITTEE OF THE WHOLE.[1]

---

1. Rule for forming committee. Section 4704.
2. Origin and development of. Section 4705.
3. Nature and powers of. Sections 4706–4715.[2]
4. Certain motions not in order in. Sections 4716–4721.
5. Yeas and nays not taken in. Sections 4722–4724.
6. After voting to go into committee no motions in order. Sections 4725–4728.
7. Order of business in. Sections 4729–4734.
8. Unfinished business in. Sections 4735, 4736.
9. Rules of proceeding in. Section 4737.[3]
10. Reading of bills. Sections 4738–4741.
11. Amendment under five-minute rule. Sections 4742–4751.
12. Rising and reporting. Sections 4752–4766.
13. The simple motion to rise. Sections 4767–4773.
14. Various motions for disposition of a bill. Sections 4774–4782.
15. Questions of order. Sections 4783, 4784.[4]
16. Informal rising. Sections 4785–4791.[5]

4704. In forming a Committee of the Whole, the Speaker leaves the chair, after appointing a Chairman to preside.

The Chairman of the Committee of the Whole may cause the galleries or lobby to be cleared in case of disturbance or disorderly conduct therein.

Present form and history of section 1 of Rule XXIII.

---

[*] See Volume VIII, Chapter CCXXXVII.

[1] In early practice given power to take testimony. (Sec. 1804 of Vol. III.)

Subjects once considered in, irrespective of appropriations or revenue. (Sec. 1984 of Vol. III.)

House sometimes attends impeachment trials in. (Secs. 2027, 2374 of Vol. III.)

Motions to go into, to consider revenue and appropriation bills. (Secs. 3072–3085 of this volume.)

Motions to go into, after call of committees. (Secs. 3134–3141 of this volume.)

Relations to special orders. (Secs. 3214–3230 of this volume.)

Conference reports not considered in. (Secs. 6559–6561 of Vol. V.)

Relations to Congressional Record. (Secs. 6986–6988 of Vol. V.)

Rule of admission to floor applies to. (Sec. 7285 of Vol. V.)

[2] In early years matters originated in. (Secs. 1507, 1541 of Vol. II.)

Articles of impeachment considered in. (Secs. 2415, 2420 of Vol. III.)

[3] As to debate in. (Chapter CXV, secs. 5203–5211 of Vol. V.)

Failure of quorum in. (Secs. 2966–2979 of this volume.)

[4] See also sections 6927–6937 of Vol. V.

Speaker sometimes takes the chair to restore order. (Secs. 1348–1351 of Vol. II.)

Extreme disorder in. (Secs. 1649–1653, 1657 of Vol. II.)

Questions of privilege in. (Secs. 2540–2544 of Vol. III.)

[5] Reception of messages while sitting. (Sec. 6590 of Vol. V.)

4787. **At an informal rising of the Committee of the Whole a message from the President of the United States may be laid before the House only by unanimous consent.**—On June 13, 1902,[1] the Committee of the Whole House on the state of the Union rose informally to receive messages from the President of the United States.

The messages having been communicated to the House, the Speaker[2] said:

If there is no objection, the Chair will lay the messages before the House.

Mr. Oscar W. Underwood, of Alabama, objected.

Thereupon the Speaker said:

Objection being made, the Committee of the Whole will resume its sitting.

4788. **Sometimes on the informal rising of the Committee of the Whole, the House, by unanimous consent, transacts business, such as the presentation of enrolled bills, the swearing in of a Member, or consideration of a message.**—On February 26, 1859,[3] the Committee of the Whole informally rose, and Mr. James Pike, of New Hampshire, from the Committee on Enrolled Bills, reported that they had examined and found truly enrolled certain bills.

Thereupon the Speaker[4] signed the same; and the committee then resumed its session.[5]

4789. On May 5, 1880,[6] the Committee of the Whole informally rose to receive a message from the Senate. The message having been read, Mr. Martin Maginnis, of Montana, asked the House to concur in a verbal amendment to one of the bills just received from the Senate.

The Speaker[7] said:

The rising of the committee is informal. That request can not now be entertained.

4790. On May 14, 1896,[8] the Committee of the Whole informally rose to receive a message from the Senate, one of the announcements of which was that the Senate had passed with amendments a bill (H. R. 7977) making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes, asked a conference with the House of Representatives on the bill and amendments, and had appointed Mr. Frye, Mr. Quay, and Mr. Vest as the conferees on the part of the Senate.

As soon as the reading of the message was concluded, Mr. Binger Hermann, of Oregon, asked unanimous consent that the Senate amendments to this bill be

---

[1] First session Fifty-seventh Congress, Record, p. 6746.
[2] David B. Henderson, of Iowa, Speaker.
[3] Second session Thirty-fifth Congress, Globe, p. 1417.
[4] James L. Orr, of South Carolina, Speaker.
[5] It is quite common for the committee to rise informally for this purpose. (See Record, first session Fifty-first Congress, p. 10350; first session Fifty-fifth Congress, p. 507; and first session Fifty-first Congress, p. 7774. In the latter case conferees also were appointed.)
[6] Second session Forty-sixth Congress, Record, p. 3028.
[7] Samuel J. Randall, of Pennsylvania, Speaker.
[8] First session Fifty-fourth Congress, Record, pp. 5249, 5270, 5532.

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 5 of 23

# Chapter CXL.

## SESSIONS AND ADJOURNMENTS.[1]

1. Provision of the Constitution. Section 6672.
2. The three-day period and its conditions. Sections 6673–6675.[2]
3. The holiday recess. Sections 6676–6685.
4. Instance of a session prolonged by recess. Section 6686.
5. A recess a real, not imaginary time. Section 6687.
6. Adjournment of Congress not fixed by law. Section 6688.
7. Sine die adjournment. Section 6689.[3]
8. Special session ends with day of meeting of next regular session of a Congress. Sections 6690–6693.
9. End of last session of a Congress. Sections 6694–6697.
10. Privilege of concurrent resolutions of adjournment. Sections 6698–6706.
11. Adjournment of House at time of sine die adjournment of Congress. Sections 6707–6721.[4]
12. Forms and ceremonies at adjournment sine die. Sections 6722–6726.
13. Business undisposed of at end of a session. Section 6727.
14. Sessions on Sunday. Sections 6728–6733.[5]
15. Adjournment of the legislative day. Sections 6734–6740.[6]

**6672. Neither House during a session of Congress may, without the consent of the other, adjourn for more than three days, or to another place.**

**When the two Houses disagree as to adjournment, the President may adjourn them.**

Section 5 of Article I of the Constitution provides:

Neither House during the session of Congress shall, without the consent of the other,[7] adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting.

---

[1] See also Chapter I of Volume I, sections 1–13, for precedents as to the meeting of Congress.

[2] The Senate sitting for an impeachment trial may adjourn for more than three days. (Sec. 2423 of Vol. III.)

[3] Forms of resolutions providing for adjournment sine die or for a recess, and then privileged nature. (Sec. 4031 of Vol. IV.)

[4] Adjournment in the midst of a roll call. (Sec. 6325 of this volume.)

[5] As to Sunday, 7245, 7246 of this volume.

[6] Distinction between the legislative and calendar day. (Sec. 3192 of Vol. IV.)
Fixing the hour of daily meetings. (Sections 104–117 of Vol. I.)

[7] December 21, 1882 (second session Forty-seventh Congress, Record, p. 490), when the concurrent resolution of the House proposing a holiday recess of the Congress was received in the Senate, an amendment was offered to permit the House alone to take such recess, leaving the Senate in session. The Senate declined to agree to the amendment. Procedure like this has never been taken, the two Houses always having continued in session together except in instances wherein the President has convened the Senate alone in extraordinary session.

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 6 of 23
App. 1043

The Speaker then said:

The first part of that clause declares that "each House shall be the judge of the election, returns, and qualifications of its own Members, and a majority of each shall constitute a quorum to do business." This is the broad charter given in the Constitution by which the two Houses transact all their legislative business. It includes, of course, within its range of power the authority to lay down an order of business, to decide when they shall meet, and what business they shall or shall not take up when they do meet. This is the power conferred by the Constitution upon a quorum of each House.

The clause then concludes by giving certain powers to less than a quorum. "A smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent Members, but in such manner and under such penalties as each house may provide." They must, therefore, compel the attendance of absent Members in such Manner as each House (which means a quorum thereof) shall have provided anterior to that time. It follows, the Chair thinks, by the plain reading of the Constitution, that a minority of each House, less than a quorum, can not have, as the gentleman from Ohio (Mr. Schenck) argues, larger power than a majority of each House sitting as a legislative body. If the point of order made is correct, less than a quorum has more power than more than a quorum, an anomaly never recognized by parliamentary law nor conferred by the Constitution, in the opinion of the Chair. The limitation of the power of less than a quorum is absolute. They may do certain things in such manner and form and under such penalties as each House (which means a majority thereof) shall have previously provided.

The Chair, therefore, overrules the point of order on three grounds: First, that both Houses of Congress, at the opening meeting of the first session of this Congress, considered this provision of the Constitution, when it declared for exactly such an adjournment as is provided for in the pending resolution. That is a parliamentary precedent not questioned at that time, as the Chair understands, by any Member in either branch—certainly not appealed from in either branch—but spoken of latterly, when it was supposed there might not be a quorum present on the 3d day of July.

The Chair overrules it for a second reason, which is, that a majority of each House, when there was a quorum present, have determined that when Congress assembled on the 3d of July, if there was not a quorum present the absent Members should not be coerced, but that the presiding officers of both branches, who were simply the organs and servants of the two Houses to execute their orders, should then adjourn Congress without day, with full notice to every Senator and Representative of what would be the specific order of business on the 3d day of July, and what would be the result if a majority of either House failed to appear on that day.

The Chair overrules it on the third ground, that at the conclusion of long sessions the two Houses have sometimes provided for an adjournment at a specified day and hour, but that after a certain date only formal business, such as the signing of bills, shall be transacted, and at the final adjournment of such first session less than a quorum has been present.

If the point of order made by the gentleman from Ohio be correct, then if there were no quorum present at such a time the absence of a quorum would render null the concurrent resolutions of quorum of both the House and the Senate.

Mr. Schenck having appealed, the Chair was sustained, yeas 125, nays 14.

On July 20,[1] the Congress took another recess until November 21. When it reassembled the roll of the House was not called, and no notice of the presence of a, quorum was sent to either Senate or House. The Speaker (Mr. Colfax) also assumed that the first business in order was the reading of the Journal of the last day before the recess.

**6687. A recess of Congress is a real, not imaginary time, when it is not sitting in regular or extraordinary session.**

---

[1] First session Fortieth Congress, Journal, p. 253; Globe, p. 768. The resolution providing for this recess was in the ordinary form, providing simply that the presiding officers adjourn their respective Houses to meet on November 21. (Journal, p. 250.)

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 7 of 23

| 80TH CONGRESS } | SENATE | { REPORT |
| 2d Session | | No. 1620 |

## REVISION OF TITLE 18, UNITED STATES CODE

JUNE 14 (legislative day, JUNE 1), 1948.—Ordered to be printed

Mr. WILEY, from the Committee on the Judiciary, submitted the following

## REPORT

[To accompany H. R. 3190]

The Committee on the Judiciary, to whom was referred the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," having considered the same, do now report the bill to the Senate favorably, with amendments, and recommend that the bill, as amended do pass.

The purpose of the bill is to codify and revise the laws relating to Federal crimes and criminal procedure.

With the amendments proposed by the committee the bill includes all pertinent laws to January 5, 1948, and is made effective September 1, 1948.

The bill makes it easy to find the criminal statutes because of the arrangement, numbering, and classification. The original intent of Congress is preserved. A uniform style of statutory expression is adopted. The new Federal Rules of Criminal Procedure are keyed to the bill and are reflected in part II of title 18.

Obsolete and executed provisions are eliminated. Uncertainty will be ended and there will no longer be any need to examine the many volumes of the Statutes at Large as the bill, upon enactment, will itself embody the substantive law which will thus appear in full in the United States Code.

Codification and revision of the criminal statutes was undertaken in October 1943 by the House Committee on Revision of the Laws. A bill prepared by that committee passed the House on July 16, 1946, Seventy-ninth Congress, was reintroduced in the present Congress as H. R. 3190, and passed the House again on May 12, 1947.

The care with which the bill has been prepared and brought to date in the present Congress under the supervision of the House Committee on the Judiciary is reflected by that committee's report, House Report No. 304 of the Eightieth Congress. For a detailed

On page 118, line 23, before "shall be fined", strike out "amine into the affairs of such institution,".

### EXPLANATION

Amendments Nos. 6 and 7 involve no change in existing law. The stricken words are unnecessary and inconsistent with other sections of this revision defining embezzlement but are necessary and appropriate in defining the offense of false entries in sections 1005 and 1006. See sections 641, 645, and 659 of this title.

8.   On page 134, line 19, after "both", strike out the period at the end of this line and insert—

; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

### EXPLANATION

This amendment gives effect to the act of June 21, 1947 (ch. 111, 61 Stat. 134). amending section 138 of the Criminal Code of 1909 (35 Stat. 1113; 18 U. S. C. sec. 244), the latter being section 755 of revised title 18 as set out in this bill.

9.   On page 158, insert new matter after line 12, as follows:

While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association.

### EXPLANATION

This amendment incorporates in section 955 of title 18 the exception made to the Johnson Act by act of July 31, 1945 (ch. 339, sec. 9, 59 Stat. 516; 31 U. S. C., sec. 804b).

10.   On page 367, lines 15 to 18, inclusive, strike out all of lines 15 to 18, inclusive, and insert in lieu thereof the following two paragraphs:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

### EXPLANATION

This amendment is necessary to preserve the provisions of section 371 (1) of title 28 United States Code, 1940 edition, giving the district court of the United States original jurisdiction of all offenses against the laws of the United States, exclusive of State courts.

11.   On page 415, line 10, after "Canal Zone," insert "District of Columbia,".

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 9 of 23

the protection of their civil rights, all with due regard to the established customs of such peoples.

SEC. 4. For the purposes of this concurrent resolution, the committee, or any duly authorized subcommittee thereof, is authorized to hold such hearings, to sit and act at such times and places during the sessions, recesses, and adjourned periods of the Eightieth Congress, to employ such consultants, specialists, clerks, and other assistants, to travel, and authorize its assistants to travel, freely through such areas and such other places, to utilize such transportation, housing, and other facilities as the Army, Navy, Marine Corps, Coast Guard, and Air Force may make available, to require by subpena or otherwise the attendance of such witnesses and the production of such correspondence, books, papers, and documents, to administer such oaths, to take such testimony, and to make such expenditures, as it deems advisable. The cost of stenographic services to report such hearings shall not be in excess of 25 cents per hundred words. The expenses of the committee, which shall not exceed $50,000, shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers approved by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

Passed June 18, 1948.

Hearings.

Employment of consultants, etc.

Witnesses.

Expenses.

---

### COMMUNIST PARTY OF THE UNITED STATES

June 19, 1948
[H. Con. Res. 199]

Printing of additional copies of House report.

*Resolved by the House of Representatives (the Senate concurring),* That there be printed six thousand additional copies of the report (House Report Numbered 1920) on the Communist Party of the United States as an Advocate of Overthrow of Government by Force and Violence, of which five thousand copies shall be for the use of the Committee on Un-American Activities of the House of Representatives and one thousand copies shall be for the House document room.

Passed June 19, 1948.

---

### UNITED STATES BOARD OF PAROLE

June 19, 1948
[H. Con. Res. 213]

Printing of hearings of special subcommittee.
34 Stat. 1012.
44 U. S. C. § 154.

*Resolved by the House of Representatives (the Senate concurring),* That, in accordance with paragraph 3 of section 2 of the Printing Act, approved March 1, 1907, the Committee on Expenditures in the Executive Departments, House of Representatives, be, and is hereby, authorized and empowered to have printed for its use two thousand five hundred copies of the hearings held before a special subcommittee of said committee during current Congress, relative to investigation as to the manner in which the United States Board of Parole is operating and as to whether there is a necessity for a change in either the procedure or basic law.

Passed June 19, 1948.

---

### ADJOURNMENT

June 20, 1948
[H. Con. Res. 218]

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Sunday, June 20, 1948, they

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 10 of 23
App. 053
152

stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

Passed June 20, 1948.

---

### SIGNING OF ENROLLED BILLS, ETC.

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

Passed June 20, 1948.

---

### JOINT MEETING

*Resolved by the House of Representatives (the Senate concurring),* That the two Houses of Congress assemble in the Hall of the House of Representatives on Tuesday, July 27, 1948, at 12:30 o'clock in the afternoon, for the purpose of receiving such communication as the President of the United States may be pleased to make to them.

Passed July 27, 1948.

---

### ADJOURNMENT

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Saturday, August 7, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

Passed August 7, 1948.

---

### SIGNING OF ENROLLED BILLS, ETC.

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

Passed August 7, 1948.

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and ...ct copy of documents in his custody.

| SIGNATURE | |
|---|---|
| NAME Richard H. Hunt | DATE 05/11/07 |
| TITLE Director Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407-A

# H. R.

## An Act

3190

to revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

Examined and found truly enrolled.

June 18 19 48

K M LeCompte

Chairman.

gpo 69793

# H. R. 3190

---

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the
United States Code, entitled "Crimes and Criminal Pro-
cedure".

1    *Be it enacted by the Senate and House of Representa-*
2    *tives of the United States of America in Congress assembled,*
3    That Title 18 of the United States Code, entitled "Crimes
4    and Criminal Procedure", is hereby revised, codified, and
5    enacted into positive law, and may be cited as "Title 18,
6    U. S. C., §—", as follows:

1 international extradition, including the fees of the com-

2 missioner, shall be certified by the judge or commissioner

3 before whom the hearing shall take place to the Secretary

4 of State of the United States, and the same shall be paid

5 out of appropriations to defray the expenses of the judiciary

6 or the Department of Justice as the case may be.

7 The Attorney General shall certify to the Secretary

8 of State the amounts to be paid to the United States on

9 account of said fees and costs in extradition cases by the

10 foreign government requesting the extradition, and the

11 Secretary of State shall cause said amounts to be collected

12 and transmitted to the Attorney General for deposit in the

13 Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or
      against Indians on Indian reservations.

14 § 3231. DISTRICT COURTS

15 Offenses against the United States shall be cognizable

16 in the district courts of the United States, but nothing in

17 this title shall be held to take away or impair the jurisdiction

18 of the courts of the several states under the laws thereof.

| Date | Statutes at Large | | | | U. S. Code | |
| | Chapter | Section | Volume | Page | Title | Section |
|---|---|---|---|---|---|---|
| 1946—July 10___ | 547 | _____ | 60 | 524, 525 | 18 | 641 |
| July 24___ | 606 | _____ | 60 | 656 | 18 | 409–411 |
| Aug. 2___ | 735 | _____ | 60 | 789 | 18 | 408o |
| Aug. 14___ | 964 | [66] 3 | 60 | 1064 | 7 | 1026 |

[66] Only the provisions amending section 52 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Passed the House of Representatives May 12, 1947.

Attest:

*John Andrews*

Clerk.

80TH CONGRESS
1ST SESSION

# H. R. 3190

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the United States Code, entitled "Crimes and Criminal Procedure".

JUN 17 1948

(CALENDAR DAY)
JUN 18 1948

House agrees to Senate amendments.

In the Senate of the United States,

JUN 18   LEG. DAY JUN 15 '48

Resolved, That this bill pass with amendments.

Attest:

Carl A. Loeffler

Secretary

COPY

from

THE NATIONAL ARCHIVE
Records of the U.S.
House of
Representatives
Record Group 233

HR 80A-B9
HR 3190

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, r the seal of the National Archives of the United States, that the attached reproduction(s) is a true and copy of documents in his custody.

| SIGNATURE | |
|---|---|
| *Aloha South* | |
| NAME ALOHA SOUTH | DATE July 27, 2007 |
| TITLE ASST. BRANCH CHIEF, OLD MILITARY & CIVIL RECORDS | |
| NAME AND ADDRESS OF DEPOSITORY NATIONAL ARCHIVES & RECORDS ADMINISTRATION 700 PENNSYLVANIA AVENUE, NW WASHINGTON, DC 20408 | |

NA FORM 14007 (10-86)



## Eightieth Congress of the United States of America
### At the Second Session

Begun and held at the City of Washington on Tuesday, the sixth
day of January, one thousand nine hundred and forty-eight

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United
States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,* That Title 18 of the
United States Code, entitled "Crimes and Criminal Procedure", is
hereby revised, codified, and enacted into positive law, and may be
cited as "Title 18, U. S. C., § ——", as follows:

### TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. |
|---|---|---|
| I. | Crimes | 1 |
| II. | Criminal Procedure | 3001 |
| III. | Prisons and Prisoners | 4001 |
| IV. | Correction of Youthful Offenders | 5001 |

#### PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |

Case 1:08-cr-00055-RLV-DCK   Document 127-17   Filed 10/30/09   Page 20 of 23

App. 115

in the several districts through which it may be necessary for him to pass with such prisoner, so far as such power is requisite for the prisoner's safe-keeping.

§ 3194. Transportation of fugitive by receiving agent

Any agent appointed as provided in section 3182 of this title who receives the fugitive into his custody is empowered to transport him to the State or Territory from which he has fled.

§ 3195. Payment of fees and costs

All costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority.

All witness fees and costs of every nature in cases of international extradition, including the fees of the commissioner, shall be certified by the judge or commissioner before whom the hearing shall take place to the Secretary of State of the United States, and the same shall be paid out of appropriations to defray the expenses of the judiciary or the Department of Justice as the case may be.

The Attorney General shall certify to the Secretary of State the amounts to be paid to the United States on account of said fees and costs in extradition cases by the foreign government requesting the extradition, and the Secretary of State shall cause said amounts to be collected and transmitted to the Attorney General for deposit in the Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or against Indians on Indian reservations.

§ 3231. District courts

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

§ 3232. District of offense—(Rule)

SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Proceedings to be in district and division in which offense committed, Rule 18.

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1940—Continued | | | | | | |
| Mar. 28 | 72 | | 54 | 80 | 18 | 97 |
| Apr. 17 | 101 | | 54 | 110 | 28 | 421 |
| Apr. 30 | 184 | | 54 | 171 | 18 | 85 |
| Do | 178 | 1–3 | 54 | 175, 176 | 18 | 733, 733a, 735b |
| June 6 | 241 | | 54 | 234 | 18 | 458 |
| June 6 | 276 | | 54 | 240 | 28 | 217a |
| Do | 395 | | 54 | 255, 256 | 18 | 412a |
| June 11 | 323 | | 54 | 304 | 18 | 451 |
| Do | 325 | 1–3 | 54 | 306 | 18 | 460–471 |
| June 13 | 350 | | 54 | 391 | 18 | 252 |
| June 25 | 425 | | 54 | 571, 572 | 18 | 706 |
| June 28 | 439 | 1–5 | 54 | 670, 671 | 18 | 9–13 |
| June 30 | 445 | | 54 | 688 | 18 | 687 |
| Do | 449 | 1–5 | 54 | 692, 693 | 18 | 641, 718, 719, 723a, 753k |
| Do | 455 | | 54 | 696 | 12 | 588b |
| July 10 | 567 | | 54 | 747 | 18 | 587 |
| July 19 | 640 | 1, 3, 5, 6 | 54 | 767, 772 | 18 | 61a, 611, 611n–1, 611t |
| Oct 8 | 762 | | 54 | 1021 | 18 | 203 |
| Oct. 9 | 777 | 6 | 54 | 1028 | 18 | 582–585 |
| Do | 788 | 1–5 | 54 | 1058, 1059 | 18 | 575, 575a–575d |
| Oct. 14 | 872 | | 54 | 1184 | 18 | 398a |
| Do | 876 | 346 (a–h), (j), 347 | 54 | 1153–1155 | 8 | 746 (a–h), (j), 747 |
| Oct. 17 | 897 | 1–6 | 54 | 1201–1204 | 18 | 14, 14 note 15–17 |
| Nov. 30 | 926 | | 54 | 1220, 1221 | 50 | 101, 104–106 |
| 1941—May 21 | 135 | 1 (part) | 55 | 220 | 18 | 241 |
| June 11 | 204 | | 55 | 252 | 18 | 753f |
| June 21 | 212 | | 55 | 264, 265 | 18 | 746a, 746b |
| June 28 | 261 | 10 | 55 | 365 | 12 | 1731, (1) |
| July 9 | 283 | | 55 | 581 | 18 | 896a |
| July 11 | 287 | | 55 | 583 | 18 | 818a |
| Aug. 18 | 306 | 1–3 | 55 | 631, 632 | 18 | 419a, 419b, 419c, 419d |
| Aug. 21 | 338 | | 55 | 654 | 50 | 104 |
| Oct. 21 | 453 | | 55 | 743, 744 | 18 | 753f |
| Nov. 15 | 473 | 1, 2 | 55 | 763, 764 | 18 | 105, 107 |
| Nov. 21 | 492 | | 55 | 770 | 18 | 689 |
| Dec. 22 | 618 | | 55 | 853 | 18 | 621 |
| Dec. 31 | 642 | 1–3 | 55 | 876, 877 | 18 | 503, 503, note, 504 |
| 1942—Mar. 7 | 150 | | 56 | 141 | 18 | 361 |
| Mar. 10 | 178 | 1 (part) | 56 | 155 | 18 | 755a |
| Mar. 21 | 191 | | 56 | 173 | 18 | 97a |
| Mar. 27 | 199 | 1106 | 56 | 184 | 50 App. | 641e |
| May 9 | 290 | 1 | 56 | 271, 272 | 18 | 652 |
| Aug. 24 | 555 | 1, 3 | 56 | 747, 748 | 18 | 560a |
| Sept. 16 | 561 | 214 | | | 50 | 244 |
| Dec. 24 | 823 | 1, 2, 3 | 56 | 1067 | 18 | 420f, 420g, 420h |
| Nov. 22 | 824 | | 56 | 1087, 1088 | 50 | 101 |
| 1943—June 30 | 179 | 1 (part) | 57 | 258 | 18 | 647 |
| Nov. 22 | 302 | | 57 | 601 | 18 | 87 |
| 1944—Mar. 4 | 53 | 1, 2, 3, 4 | 58 | 111 | 18 | 472, 473, 474 |
| Apr. 21 | 181 | | 58 | 149, 150 | 18 | 753m |
| Apr. 4 | 162 | | 58 | 168 | 18 | 409 |
| July 1 | 458 | 10 (a), (d), (e) | 58 | 667, 668 | 41 | 119 |
| Do | 458 | 10 (b) | 58 | 667 | 18 | 500a |
| Sept. 27 | 426 | | 58 | 752 | 18 | 204 |
| Oct. 3 | 470 | 33 | 58 | 781 | 50 | 560a |
| Dec. 20 | 622 | 3, 4 | 58 | 837 | 12 | 1150c |
| Dec. 23 | 706 | 1, 3, 5 | 58 | 914, 915 | 18 | 52, 53a, 53b |
| 1945—Apr. 30 | 108 | | 59 | 101 | 18 | 97b |
| May 18 | 126 | | 59 | 168 | 18 | 618a |
| June 8 | 178 | 1, 2, 3 | 59 | 234, 235 | 18 | 241, 241a, 241 |
| July 31 | 339 | 9 | 59 | 516 | 31 | 804b |
| Sept. 24 | 383 | 1, 2, 3 | 59 | 566 | 18 | 408 |
| 1946—May 15 | 256 | | 60 | 182 | 18 | 518a |
| July 1 | 537 | | 60 | 420 | 15 | 17 note 420a–420n–1 |
| | | | | | 62 | 62 note, 101 note, 161 note |
| July 10 | 547 | | 60 | 524, 525 | 18 | 641 |
| July 24 | 605 | | 60 | 556 | 18 | 409–411 |
| Aug. 2 | 755 | | 60 | 789 | 18 | 608a |
| Aug. 14 | 964 | 5 | 60 | 1,064 | 7 | 1,026 |
| 1947—Apr. 16 | 30 | | 61 | 52 | 18 | 411 |
| May 16 | 73 | | 61 | 97 | 18 | 744b–1 |
| June 21 | 111 | | 61 | 134 | 18 | 244 |
| June 23 | 127 | 304 | 61 | 150 | 2 | 251 |

⁴¹ First proviso, only, appearing on this page.
⁴² First proviso, only, appearing on this page.
⁴³ As added by Act, Apr. 1, 1944, ch. 150 (part), 58 Stat. 146.
⁴⁴ Second proviso, only, appearing on this page.
⁴⁵ First, second, third, and sixth paragraphs, only, of this section of title 41 of the United States Code, 1940 edition.
⁴⁶ Only the provisions amending section 52 of Act, July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

*Approved*

*June 25 1948*

*Harry S Truman*

*12:23 P M. E. D. T*

*Joseph W. Martin Jr.*
Speaker of the House of Representatives.

*A. H. Vandenberg*
President of the Senate pro tempore.

September 11, 2006

After conducting a thorough examination of the journals, I found no entry in the journal of the House of any May 12, 1947 vote on the H.R. 3190 bill, although pages 343-344 of the Journal of the House of Representatives from the 1st Session of the 80th Congress indicates that the bill was amended, purportedly passed, and transmitted to the Senate for concurrence. The Senate took no action on the H.R. 3190 bill prior to the December 19, 1947 sine die adjournment.

Page 5049 of the Congressional Record, 80th Congress, 1st Session indicates 44 Members voting 38 to 6 to amend H.R. 3190 on May 12, 1947. Therefore by counting the total yea and nay vote a quorum was not present.

According to House Rules, when less than a majority of a quorum votes to pass a bill, the journal must show the names of Members present but not voting. I found no record of any names for the May 12, 1947 vote. I hope this information has answered your questions.

Thank you for contacting the Office of the Clerk.

Sincerely Yours,

*Karen L. Haas*

Karen L. Haas
Clerk, U.S. House of Representatives

APPENDIX A